[Civ. No. 12365. Third Dist. July 31, 1969.]

JOHN L. HARMER, as State Senator, et al., Petitioners, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent; CALIFORNIA INDIAN EDUCATION ASSOCIATION, INC., et al., Real Parties in Interest.

Thomas C. Lynch, Attorney General, Joel E. Carey and Jan Stevens, Deputy Attorneys General, for Petitioners.

No appearance for Respondent.

George F. Duke, Richard B. Collins, Jr., Lee J. Sclar and Neil M. Levy for Real Parties in Interest.

FRIEDMAN, J.—Of the four petitioners, three are members of the State Senate and one a member of the Assembly. They seek a writ of prohibition to restrain the Sacramento Superior Court from proceeding against them in a civil lawsuit. They assert the immunity established by article IV, section 14, of the California Constitution: "A member of the Legislature is not subject to civil process during a session of the Legislature or for 5 days before and after a session."

The petitioner-legislators are members of the State Advis-

ory Commission on Indian Affairs. Together with the commission itself, its executive secretary and its nonlegislative members, three of the petitioners were named as defendants in a class action brought in the Sacramento Superior Court on behalf of American Indians residing in California. The lawsuit asserted a violation of the laws requiring open meetings of state agencies (Gov. Code, §§ 11120-11130) and sought an injunction against alleged secret meetings.[1] Summons and complaint in the action were served on these three petitioners on or about April 27, 1969, and a subpoena on the fourth on or about May 5, 1969. Additionally, a notice of deposition and subpoena duces tecum were served on petitioner Harmer on June 18, 1969. The Legislature was in session during these dates and remains in session at this time.

Asserting their constitutional immunity, petitioners moved the superior court to quash the service of summons and the discovery proceedings. The superior court denied the motions. It ordered petitioner Harmer to submit himself to a deposition on August 7, 1969, and allowed him until August 1, 1969, to answer interrogatories. This proceeding was then instituted. The plaintiffs in the lawsuit appear here as real parties in interest. They have filed a general demurrer to the petition.

■ The State Advisory Commission on Indian Affairs is a statutory body consisting of the Director of Social Welfare, the Director of Public Health, the Director of Education, three members of the Senate and three members of the Assembly. (Gov. Code, §§ 8110-8112.) The chairman is designated by the Governor. (Gov. Code, § 8114.) According to current law, the commission is to go out of existence on October 1, 1969. (Gov. Code, § 8118.) Essentially, the commission's function is to study the problems of Indians in California and to report its findings and recommendations to the Governor and Legislature. (Gov. Code, §§ 8116, 8117.)[2]

■ Where, as here, a claim of legislative immunity has been made in the trial court and denied, prohibition is a

[1]Government Code, section 11130: "Any interested person may commence an action either by mandamus or injunction for the purpose of stopping or preventing violations or threatened violations of this article by members of the state agency."

[2]Government Code, section 8116: "The commission shall study the problems of the American Indians residing in California, including, but not limited to, the problems presented by the termination of federal control over Indian affairs, the operation, effect, administration, enforcement, and needed revision of any and all state laws pertaining to the Indians and the three relocation centers in California and shall report

proper remedy. (*Allen* v. *Superior Court,* 171 Cal.App.2d 444, 448 [340 P.2d 1030].) Real parties in interest argue that petitioners "waived" their immunity by accepting membership on the State Advisory Commission on Indian Affairs. The argument rests on two assumptions: first, that the exemption in article IV, section 14, is confined to process in those civil actions involving legislative functions; second, that advisory commission membership places the legislator-members in a nonlegislative role or character. Both assumptions are erroneous.

In precise terms article IV, section 14, creates an exemption from civil process without qualification as to the kind or subject matter of the lawsuit. Similar exemptions have been construed to cover civil actions of all kinds, including those involving the legislator's personal affairs. (See *Long* v. *Ansell,* 293 U.S. 76 [79 L.Ed. 208, 55 S.Ct. 21]; *Fuller* v. *Barton,* 234 Mich. 540 [208 N.W. 696]; Note, 94 A.L.R. 1470, 1479-1480.) While conveying incidental personal advantage, such immunities are designed to benefit the public by protecting legislators against compelled distraction and interference during the session. (See *Tenney* v. *Brandhove,* 341 U.S. 367, 373-374, 377 [95 L.Ed. 1019, 1025-1026, 1027, 71 S.Ct. 783].) The California immunity applies to civil process generally and cannot be squeezed by interpretation to a restricted class of lawsuits. (Cf. *Allen* v. *Superior Court, supra,* 171 Cal.App.2d 444; *Hancock* v. *Burns,* 158 Cal.App. 2d 785 [323 P.2d 456].)

---

its findings, together with any suggested legislation, to the Governor and to the Legislature not later than the 15th day of June, 1962.''

Government Code, section 8117: ''The commission has the following additional powers and duties:

''(a) To contract with such other agencies, public or private, as it deems necessary for the rendition and affording of such services, facilities, studies, and reports to the commission as will best assist it to carry out the purposes for which it is created.

''(b) To co-operate with and secure the co-operation of county, city, city and county, and other local agencies in investigating any matter within the scope of this chapter.

''(c) To report its findings and recommendations to the Governor, the Legislature, and to the people from time to time and at any time, not later than provided in Section 8116.

''(d) To do any and all other things necessary or convenient to enable it fully and adequately to exercise its powers, perform its duties, and accomplish the objects and purposes of this chapter.

''(e) To appoint an advisory committee consisting of not more than seven members, three of whom shall be appointed from among the recognized leaders of the California Indian reservations in the northern, central and southern sections of the State, and four of whom shall be appointed from the public at large. Section 11009 of the Government Code is applicable to the advisory committee.''

■ The second assumption is equally fallacious. As members of the advisory commission, petitioners have not doffed their legislative character and immunity. A study agency of similar composition and function is the California Commission on Interstate Co-operation. (Gov. Code, §§ 8000-8013.) In 1941 the California Supreme Court held that legislative members of the latter commission were not in violation of the constitutional provision (now found in art. IV, § 13) which prohibits a legislator from holding a nonlegislative office or trust. The court declared: ''Where a statute merely makes available new machinery and new methods by which particular legislators may keep themselves informed upon specific problems, it cannot be said to have imposed upon them any new office or trust. The additional duties which rest upon the legislative members of the commission are identical in purpose and kind with those which they already perform.

■ As was said in *People* v. *Tremaine*, 252 N.Y. 27, 41 [168 N.E. 817], 'The duties of members of the Legislature may be enlarged without making a civil appointment or creating a new office, so long as the duties are such as may be properly attached to the legislative office. . . .' We hold, therefore, that the statute here attacked did not contemplate the conferring of any new office, trust, or employment upon the legislative members of this commission.'' (*Parker* v. *Riley*, 18 Cal.2d 83, 88 [113 P.2d 873, 134 A.L.R. 1405].)

■ In terms of retention of legislative status, there is no meaningful distinction between *Parker* v. *Riley* and the present case. Both commissions are hybrid groups, composed in part of officials of the executive branch and in part of legislators. Both possess a mission and function which are essentially advisory. Both are devoid of administrative functions other than those which forward its prime advisory mission. In neither case do the commission's legislator-members assume a nonlegislative character when engaged in commission activities.

Laws creating an immunity from judicial process, however temporary, inevitably trench upon the judicial function, hence may encounter constitutional objections. (See *Thurmond* v. *Superior Court,* 66 Cal.2d 836, 839-840 [59 Cal.Rptr. 273, 427 P.2d 985]; *Granai* v. *Witters, Longmoore, Akley & Brown* (1963) 123 Vt. 468 [194 A.2d 391].) Because we deal with an immunity created by the State Constitution, real parties in interest give the objection a federal coloration by equating access to the courts with the ''due process'' concept.

By analogy to the *Thurmond* case, *supra,* they urge that article IV, section 14, can be sustained only by making its application discretionary.

There are conceivable situations where an immunity of this sort might amount to a denial of due process. This is not one of them. The plaintiffs in the superior court are seeking enforcement of a right conferred by state law to demand open meetings of state boards. (Gov. Code, § 11130, fn. 1, *supra.*) In their lawsuit the commission itself is the only indispensable party; the individual members are proper but not necessary parties. (*Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 314-315 [196 P.2d 20].) Although, in view of the October 1, 1969, demise of the commission, their inability to serve effective process on the legislator-members occurs during a critical period, it does not bar them from relief.

Moreover, the immunity does not expose private citizens to abuse of governmental power untrammeled by judicial restraint. The commission is advisory only. Although it includes three members of the executive branch, its function is analogous to that of a legislative investigating committee. It does not "govern" in the sense that it executes and administers the laws. It has no power to impinge upon the lives, liberty or property of private citizens. "The positions here created do not measure up to so high a standard. They involve merely the interchange of information, the assembling of data, and the formulation of proposals to be placed before the legislature. Such tasks do not require the exercise of a part of the sovereign power of the state." (*Parker* v. *Riley, supra,* 18 Cal.2d at p. 87.) A statutory scheme clothing legislators with executive-administrative functions would run afoul of the separation of powers principle and of the prohibition against legislators holding nonlegislative office. (Cal. Const., art. III; art. IV, § 13; *Parker* v. *Riley, supra,* 18 Cal.2d at p. 88; *Springer* v. *Philippine Islands,* 277 U.S. 189 [72 L.Ed. 845, 48 S.Ct. 480]; *People* v. *Tremaine,* 252 N.Y. 27 [168 N.E. 817, 822].) Thus the specter of legislators wielding executive power while armored in immunity from civil process arouses no constitutional tremors.

Let the writ issue as prayed.

Pierce, P. J., and Regan, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied September 24, 1969. Mosk, J., did not participate therein.